May it please the court, your honor, I'm Josh Autry for the appellants and I'd like to reserve two minutes for a bottle. Okay, Mr. Autry, I'm disappointed. I thought everybody showed up to see you, but as soon as the last case was over, people cleared out. I know. I didn't know you were all here for me at first. I don't care about you. You haven't heard yet. Thank you, your honor. The court, after ruling on absolute immunity, left three claims left. The first claim is the easiest for this appeal. It's that there was fabricated testimony before the grand jury was impaneled. The problem with that claim is the plaintiff doesn't allege any fabricated testimony before the grand jury was impaneled. It's impossible and implausible. In this case, plaintiff's charges were for obstructing the grand jury. So it would be, there's no possible way they could have fabricated testimony that he was going to obstruct the grand jury before that grand jury was impaneled. Is there a way to engage in malicious prosecution before the grand jury is impaneled? Your honor, it's theoretically possible, and that's what the district court talked about. The Supreme Court left open the possibility that a prosecutor in quote unquote well before a grand jury is impaneled could do an investigative sort of fabrication solicitation of perjury, and that that would not be protected by absolute immunity. And the court left that claim open. The problem with that is under the pleadings, there's no facts for that claim in this case because the grand jury already existed when the plaintiff came to the picture. The grand jury was investigating the plaintiff's superior, Representative Prezell, and a subpoena was sent over to the office for campaign material. What were the facts that led to the malicious prosecution? He was arrested, handcuffed, detained, and subsequently released. Yes, your honor. No trial, no? No trial. They did the trial on the computer gate charges against all the other defendants, but the obstruction trial, the judge bifurcated it. So the obstruction trial was going to be after the computer gate trial. But would you agree that if the officers had probable cause to detain him that that pretty much addresses your malicious prosecution case and he cannot stand? Absolutely, your honor. And I think the probable cause question is a fairly simple one as well. They had evidence, testimony, that the call that the bosses are going to get moved from the representative's office to the campaign office to avoid the subpoena came from his desk line from a man, and he was normally at his office desk. Now plaintiff says, well, other people could have sat at a different desk, went into my line and called there for it, and there would have been essentially reasonable doubt as to who made the call. But as for probable cause. He's saying that the defendants knew that there was, they set up a scenario where the grand jury believed that since the call came from that desk, that is evidence, that's good evidence, that's enough evidence to base an indictment on, that it came from Mr. Zimmerman. But he is saying that the agents knew, the investigators knew, that everybody had access to that desk, that people were in and out, it was in a common area, and that the desk was an area that opened up to several other officers, that anybody could have made, any male could have made that call, and that there was either an obligation to tell the grand jury that or failure to tell the grand jury that was consistent with maliciously prosecuting Mr. Zimmerman. What's wrong with that? Your Honor, when it comes to probable cause, the question is whether it was reasonable to believe that it was him. And if you take the warrant, where you put all the facts in that he wants to put in, you still have probable cause. So if you put into the affidavit of probable cause his fact, that other people had access to that line, you could still have a reasonable belief that it was him that made the call, and then you have to put into the warrant evidence that the affidavit knows would cast a light on the other evidence, the other affirmance in the affidavit, and give the reader a different conclusion? Not such to defeat probable cause. And this is a case where there was a full preliminary hearing on this issue, and the judge determined, Judge Winner, after looking at that preliminary hearing, after sitting through that testimony, after listening to the defense's cross-examination on whether other people could access that line, the judge said there's a prima facie case to go forward. Does that end the inquiry there? If a judge looked at this and found there was probable cause, that we don't have the ability to second-guess the judge? Absolutely. And we're talking about qualified immunity here, Your Honor. And the Supreme Court has repeatedly said, when judges disagree as to what the law requires, it's not fair to hold the official accountable. And in this case, you had Judge Winner twice make this determination, once before the preliminary hearing, once after it, and then you had Judge Lewis on a habeas petition review the same transcript, review the defendant's arguments, plaintiff in this case, about why the evidence is not sufficient for probable cause. Well, that's why I'm asking is that you would think of a judge, as you say, three times, a judicial officer has looked at the facts and determined there's probable cause. Are we hobbled from reversing that and saying, on these three occasions the judicial officer was wrong and there was no probable cause for the issuance of this warrant of arrest? I think we are prevented from doing that, or you are prevented from doing that, Your Honor, because in this case it would be holding an official accountable when the judges believe that there's probable cause. No, what you're saying is that those judges that found probable cause were in legal error. There was no probable cause. Their assessment of the law and applying the facts to the law was incorrect. Even though there's been three determinations that there's probable cause before we get here. Your Honor, I think it's a little bit different than that because you would have to say not only that they're in error, but their error was so egregious that no reasonably competent officer could think the same thing. So, you're saying that the judges were so incompetent and believing that there was probable cause, and in a prima facie case, that no reasonable official could agree with them. And I think the evidence just doesn't support that. The allegations in the plaintiff's complaint don't support that view, that no reasonably competent officer could have found probable cause. Even if you take their facts into account, that it was a big office, that other people could have sat at different desks, other people could have sat at his desk, you have the evidence that it came from his desk line and that the transfer was made to avoid the subpoena and to move the campaign material so that they couldn't be found by the investigators, that evidence is enough to believe reasonably that the plaintiff committed the act. Well, how does it get over the old ploy that in 1983 cases, it's generally for the jury to determine whether or not there's been probable cause? Not for qualified immunity, Your Honor. For qualified immunity, we are asked whether a officer, under the circumstances that he faces, would not be able to reasonably believe that his acts violate the law. The Supreme Court has now, 15 times in a row, taken qualified immunity cases and reversed the circuit court, saying this was not clearly established under the particular contours of the right. This is a circumstance where the district court specifically said that the district court was not going to define the contours of the malicious prosecution right. This is exactly what the Supreme Court has repeatedly been saying, that it wants to do. These qualified immunity reversals by the Supreme Court are normally unanimous. Recently, in January, in White v. Pauley, the Supreme Court reversed again a qualified immunity decision, saying that it wasn't clearly established that the officer would know, in the circumstances that he faced, that this would violate the Constitution. So it's not just, is there a constitutional right to not be detained without probable cause? It is whether the official would know, under the clearly established law, that he lacks probable cause. The question is, is the officer clearly incompetent? And in this case, the answer is no. The officer's decision, the agent's decision, was ratified by prosecutors. There's four prosecutor defendants in this case that all agreed. They've been trained in the law. Then you have two judges that agree, one twice.  Your Honor, we believe that there was probable cause to prosecute, and we think that the probable cause is identical before and after the filing of charges, so it would be the same analysis. For the prosecutors, you have a more unique circumstance, because of the absolute immunity question. And so the court left open the claim against the prosecutors, who are immune from the probable cause determination, that maybe they destroyed these proffer notes from their interviews with witnesses. Wasn't he absolved of what he was doing? The charges against him were dismissed. It's not an acquittal. It's not a finding of innocence. But he wasn't prosecuted, wasn't convicted. He wasn't found guilty. So that would be a yes. Yes, Your Honor. He was allowed to go forward with a malicious prosecution, if he could prove, because it was terminated in his favor. Yes, that element we are not challenging. We're challenging the elements of whether there was a clearly established violation of his rights. And in this context, we don't believe there was. For the prosecutors, this destruction of notes is what the claim against them is based upon. Essentially, they interviewed witnesses, then those witnesses testified before the grand jury. They prepared a typed-up statement of their interviews. Absent tracing that call to that office, would there be probable cause to arrest him? No, Your Honor. There was just that one single incident that the law enforcement tracked that phone call to that phone. Well, that's the only fact we have from the complaint, Your Honor. So that's the only fact I can rely upon in this appeal. So this appeal, we're purely relying on the facts alleged in the complaint. And that is the only fact alleged in the complaint against the plaintiff. So that's the inculpatory fact that we're relying upon in this appeal. But we think that's sufficient to show probable cause under the clearly established law. Beyond that, we think that there's reason to believe that this arrest did not violate the clearly established law. For the destruction of notes, which is the only claim that should be remaining against the prosecutors because of absolute immunity, that they destroyed exculpatory evidence, he doesn't allege that the evidence was exculpatory. These were notes that were memorialized in a report of investigation in typed-up form. These were witnesses that testified before the grand jury. So there was nothing exculpatory that he lost for the claim against the prosecutors. They do have Brady concepts that are available to him if he had the notes. Your Honor, that's actually incorrect under the clearly established law. It would be a jiggly-oh claim about impeachment. In this case, the Supreme Court of Pennsylvania has repeatedly held that an officer's notes with a witness that are not memorializing that witness's statement verbatim and are not signed by that statement are inadmissible for a criminal defendant to use as impeachment in a trial. So these notes were inadmissible. They could not have been possibly used by the plaintiff, the criminal defendant, even if he had a trial. Plus, Brady is a trial right. It's violated when you have a trial. The plaintiff never had a trial. But Brady's never been released anyhow, though, is he? Correct, Your Honor. But that's the claim the district court left against the prosecutors. And so we're left with this amorphous moving target Fourth Amendment claim against the prosecutors because they're immune for the probable cause determination. But the judge says the claim can survive against them for the destruction of these notes. But the destruction of the notes doesn't violate Brady because he never had a trial. The notes could have been given to him before the trial. He had other impeachment sources. Your position is without a trial, a guilty verdict, there is no Brady? Not under the clearly established law. This court hasn't addressed the question. Every circuit that has addressed the question says that you can't bring a 1983 claim under Brady if you weren't prosecuted to trial. Some circuits have said you not only have to have a trial, you have to be convicted in order to violate Brady. This court hasn't addressed the question. But in this case, it wasn't clearly established in 2009 that Brady could be violated by the destruction of these proffer notes. And this was a destruction of proffer notes that was in accordance with OAG policy that goes back to the year 2000. They were required under the prior Attorney General's order to destroy notes when they were memorialized in a written report and when the witnesses testified. This was a challenge that was brought by Zimmerman's co-defendant. Judge Lewis said that the destruction of the notes was not only constitutional, it was proper and approved in practice. This was affirmed by the Superior Court in a published decision. Representative Feist recently did a PCRA on the same issue. Judge Lewis again said the destruction of the notes didn't violate his rights. It's the same issue as the plaintiff. So when you look at does the destruction of the notes violate the clearly established law such that a reasonable prosecutor or agent back in 2009 would have known that any judge would say this violates the Constitution? The answer is no, because every judge that's looked at it says it doesn't. Judge, if you know any notes, you've got to explain to us. Your Honor, I see that my time is about to expire in seven seconds. So what if we were to say no probable cause? That there was a probable cause? That there was not probable cause. Well, if this Court says there was not probable cause, I would still argue under qualified immunity that it wasn't clearly established that the officers lacked probable cause. In addition, it wasn't clearly established. Was it really clearly established? I believe it was not clearly established. I mean, you had two judges that said there was probable cause. And so if you're asking if no reasonably competent officer could believe there's probable cause, I think that's where you look. You have two judges that say you do, and one of them said it twice. All on the basis of the telephone call from Zimmerman's office. Which is the only fact I can rely upon on this field because it's a motion for judgment on the proceedings. And at this stage, I can only use the facts that plaintiff alleges. So this was a line telephone, not a cell phone? It was a line, Your Honor. The probable cause found by the third time around, that was not a – that was a habeas case, actually, in the state court. Well, Your Honor, habeas is a pretrial right in Pennsylvania. So they filed a habeas petition to challenge the sufficiency of the evidence. So you first get to challenge the sufficiency of the evidence at the preliminary hearing. Then it gets moved to the county court of common pleas. That was Judge Lewis. And before the county judge, you have a second opportunity before trial to test the sufficiency of the evidence to go to trial. They filed that habeas motion. It was denied. Okay. But in effect, it was denied by finding that there was probable cause. Even though it doesn't come up in a probable cause issue, does it? Well, initially it did before the charges were filed and the affidavit of probable cause to arrest. That was Judge Winter. But the prima facie case that was found at the preliminary hearing and by Judge Lewis in the court of common pleas is a slightly different standard than probable cause. The difference from a prima facie case under Pennsylvania law and probable cause under federal law is a prima facie case does not take into account credibility of witnesses. So if you have a dispute between witnesses, probable cause would look into the question of whether that witness is credible. Prima facie case would not. That's not a question in this case. In this case, they're not challenging the credibility of the witnesses. They're challenging whether or not it was sufficient evidence even if you believe it. And so even if you believe this call came from his line, even if you believe it was a man, they're saying that that was not sufficient evidence to be probable cause. And they raised that specific argument in the state court twice, and the state court ruled against them. Okay, you've given up on the seizure question. You acknowledge that the guy's been seized. I have not, Your Honor, but well over my time. You should give it up. I'm a little disappointed in you because you're such a good litigant that you didn't tell us that Black was reversed, although you cited the district court. Your Honor, I can't recall if that was done after or before my brief, but I'd be happy to address Black. We have these things now that are called letters. I understand that. It was done after the brief. Your Honor, what I would say on that point is Black was not a qualified immunity decision. It was purely a determination of whether the person was seized. And I'm not asking this court to determine whether the plaintiff was seized. I'm asking this court to determine whether in 2009 it was clear that his prosecution was a seizure. And if you look at this court's unpublished decisions in Ankle and Wiltz and in Penberth, this court repeatedly held in unpublished decisions that someone who was arrested was not seized as a result of the prosecution. I'm merely saying that you cited the Black in the district court, but I think you should have told us on appeal that it was reversed. It was decided on appeal. I apologize, Your Honor. Accepted. Thank you. He's a pretty soft guy. He's like my California son. I appreciate it. Thank you, Your Honor. Thank you. Mr. Jacob? May I please report, Your Honor? It's Devin Jacob with Jacob Litigation on behalf of John Zimmerman. How did Brady get back into this case? I thought Brady was out of the case. Well, Brady is only in the case in the context of the maliciousness of the prosecution to destroy exculpatory evidence. But you're correct. Time and time again, the defendants have tried to refashion a claim in the hope of finding an exit from the litigation. We've heard about the due process claims below. We've heard about Brady violation below. But this is not a case about that. This is a malicious prosecution case. And the elements for a malicious prosecution case do include an element of maliciousness. And to destroy exculpatory evidence and to destroy investigatory notes, for which some of which there were not actual summaries made, is not in accordance with the policy. I guess you're pushing that was fairly procedural and fairly common. I mean, what value did the notes have once there's testimony respecting what's on the notes? Well, they actually serve several purposes. Number one, not all the notes were transcribed, as at least our current understanding, into the reports as would have been for the policy. But were the notes regarding testimony that would be given before a grand jury? It's our understanding they were proper notes and investigation notes at meetings with different witnesses. Do law enforcement officers always have to keep these notes in case there is a case or a claim later? Well, Your Honor, I'm a former police officer. I always kept my notes. Oh, you kept your notes. Yes, I kept my notes. In fact, when I was done, I had stacks and stacks of the little notebooks I needed to take down. So maybe you're just a former police officer. My wife used to give me that. But, in fact, I heard that the FBI does not have a practice of destroying their investigation notes. So I don't think we should be looking to the state to determine what is the contours of a federal right. I'm just wondering whether it's wrongful just because once you testify and got the notes, am I supposed to keep them forever or can I just get rid of them? I've already testified. I'm sorry. The problem, it's our belief that not having the exculpatory evidence and not having the notes available meant that that information that could have been in those notes or should have been in those notes couldn't have been presented earlier in order to cut these charges off at the subsequent supposed probable cause. But you can't argue exculpatory evidence was denied to you. You can't argue that because there's no such thing unless someone is convicted and then files an application saying that I was incorrectly convicted because of Brady. But, again, we're not arguing a Brady claim. You say you're not, but really aren't you doing that? Without the Brady concept that a defendant is entitled to exculpatory impeachment material, without that concept for malicious prosecution, you've met the first step that you showed the prior proceedings and did favorably to you. But you've not shown any maliciousness because you haven't shown there's no such thing as a Brady exculpatory claim prior to conviction. Well, the maliciousness goes to the fact that he was prosecuted without probable cause. There is case law that says a prosecution without probable cause is malicious. Okay, we look at the probable cause. How do you get over the fact that on three occasions, judicial officers have found that based on the facts of this case, there was probable cause to arrest him? Well, Your Honor, first of all, my colleague is correct. He can only rely on certain facts. And, in fact, I put more facts in the complaint than you'd find even in the warrant. If you look in the warrant, there is simply a statement that the court should rely on the investigator that he's reviewed everything and that everything is there and that the prosecution should go forward. And then it's all in the presentment, which 168-page presentment, I think only mentioned my client three times. So the fact is there was more information. The warrant itself could not have been reasonably relied upon. And the warrant was required under current case law to present both the inculpatory and exculpatory evidence. That way, an independent judicial officer could actually weigh the evidence to determine whether probable cause was there. That did not happen in this case. But you never argued to even on habeas that the warrant was issued, but it was issued falsely because the judicial officer was denied crucial information. But there's case law, Your Honor, that says a subsequent probable cause hearing does not correct a prior incorrect arrest. So that does not save that. Yeah, but aren't you swimming upstream here? Because we have before us three determinations that, based on the facts of this case, there was probable cause. I, for one, don't see that anyone can have a habeas claim even under any circumstances until there's a criminal conviction. So I don't see where you're going as to what's malicious here when, if we agree with the three determinations that there was probable cause, where do we go that the prosecution was malicious, even though it was ended favorably? Your Honor, I guess there's a greater issue. Number one, there's been an argument for absolute immunity, so some of the context has been taken out of the case. However, importantly, the Commonwealth is one of the very few jurisdictions that has investigating as opposed to indicting grand juries. And I think that's a very important point. And I think when the court looks to what type of immunity should even be examined in this context, we need to look at the fact that in the context of an investigating grand jury, the grand jury is looking to see whether there is probable cause to even bring a charge, as opposed to in another scenario where there's already been charges filed and now we're trying to get an indictment. Why should we make a difference between the way they do it in Pennsylvania, where you don't have indicting grand juries and most states have indicting grand juries? What difference, as a practical matter, does it make? It makes a huge difference when it comes to the immunity analysis, because the majority of the case law talks about prosecutors before an indicting grand jury, and that's a prosecutorial function. But in this case, it was an investigation that was occurring before the grand jury. It was a tool that was used. All the investigators, all the prosecutors were acting as investigators to determine whether probable cause exists. So that's why we're talking about qualified as opposed to absolute immunity. Correct. Now, to the maliciousness, if I can. There was a lot more than just destruction of evidence. What is maliciousness? Well, the maliciousness is the intentional misleading of the grand jury. For instance, there was a- By whom? I'm sorry. By whom? By the defendants. There was a misleading, and there's a discussion of that. If you look in the record between 68A to 76A, it talks about what specifically was occurring that was misleading. For instance, prosecutors very carefully questioned Ms. Locetto about whether she was working on a particular day, whether she had a half day. What does this have to do with- It has to do with the prosecutors purposely did not ask questions such as, did you come into the office on your day off to move the boxes, and it was misleading. The prosecutors purposely did not provide information that Locetto and Zimmerman could have been tracked through their parking passes that they knew, that they purposely didn't put information in that the log for the pages, the messengers, only puts in information if it's a special trip as opposed to during the messenger's normal time. You're saying there were clearly omissions from the affidavit, and it's a question of fact as to whether or not those omissions were malicious in nature. Correct. Correct, Your Honor. Even if they were, does that get you to the substantive offense of malicious prosecution? Well, I believe it does, Your Honor, because number one, the charge never would have been brought, the warrant would have never been issued, if they hadn't purposely misled the judicial officer in determination whether it was probable cause to begin with, and if all those facts had been properly presented. We don't know the scope of each of these subsequent hearings, and as was conceded, the scope was not necessarily probable cause. However, there was a comment as an aside that probable cause was established. The focus of the hearing was never probable cause, at least at that juncture. And again, a subsequent decision does not save the original. The problem is that there was exculpatory evidence that when you look at it in the whole, you can see that it was meticulously withheld from the judicial officer in the determination. Your Honor, you hit on it, very importantly, that it was a single phone call, essentially. But the room that they're talking about, they purposely misled the jury as to sometimes room 414 was considered Purzell's office, but sometimes Purzell's office was the little room inside room 414. So as far as where the call was placed and where the boxes were placed, these were very important distinctions that were purposely teased out of the affidavit of probable cause and not put in. There was an intention, this was a political prosecution. If that information had been included, how do we know that probable cause would not have been issued anyway? They would have found probable cause anyway. Well, when you look at the facts that are in the complaint, I think it's very apparent that once you include that information back in, that's missing. Probable cause does not exist. It's simply not there. There is not enough to say that it was Mr. Zimmerman as opposed to the cleaning person or the colleague grabbing a show off for a meeting who picked up the phone in one of the eight other offices within the office that all likely contained the same telephone line. That would be a question of fact. That would be a question of fact, which is why the court said, I can't decide this without a full fact record, which is why, frankly, I don't believe we should be here, because the court denied the request for immunity based on disputes of fact that she believed were still there. The whole thing gets us always back to Brady, exculpatory evidence, and as far as I'm concerned, we can't say there was any exculpatory evidence which was denied unless someone got convicted, and there's been no conviction here. So how can I, as a judge, say that there's been a Brady violation here by not giving the judge this information when the probable cause was being established? Which is why I didn't bring a Brady claim on behalf of Mr. Zimmerman. I brought a malicious prosecution, and that only goes to was there a probable cause, and there are many other deficiencies that led to the defusion. You say you're bringing a malicious prosecution claim, but the gravamen of it is that your client was denied exculpatory information, correct? No, the gravamen, Your Honor, is not only the notes that were missing, but also the misleading testimony, the fabrication of testimony, the withholding of testimony. The judge wasn't given the additional information at the time the warrant was issued. Correct, and subsequently, when you look at all the missing information, probable cause is not there. How do we know that if the judge had been given this information, that the judge would not have likewise, once again, given permission for a warrant to issue? Well, my assumption is, again, of course I'm not that judge, I don't know, but my assumption is when you apply the law to the facts, if properly presented and presented in their full, then the evaluation would come down as no probable cause, and that's exactly what was presented in this case, not what should have been presented, or which would have been better presented. I'll acknowledge that. Perhaps it would have been better if the judge's finding probable cause had been given additional information, but they weren't, and even if we were to determine that there is probable cause, because the three determinations were incorrect, I say, what can we base that on? We can't base it on a violation of Brady, because there's no such thing as a Brady claim here, and nor can we say that the judge should have been given additional information, because we don't know if the additional information would have made a difference. Your Honor, what should happen, again, in my respectful opinion, is that the jury gets to decide now on these facts whether in fact there is probable cause or not. It is a big burden for the plaintiff. That is the burden of a malicious prosecution. Wait a second. Is that right? Don't we determine whether there was probable cause in this case? Not in the sense of qualified immunity or absolute immunity. The question goes to whether the law was clearly established as to the issues raised. What if the arresting officers redetermined had probable cause to arrest in this case? You're correct. Probable cause would defeat malicious prosecution. That is an absolute correct statement of law. However, again, the probable cause is not there on the face. I didn't say that's your defense. It's a difficult uphill battle that does not get to be brought unless, pursuant to process, you've been seized and prosecuted without probable cause. I'm not saying that I can prove the entire case as I stand here today. We haven't gotten into discovery, but there's enough there to assert the claim, and there's enough there in order to do discovery and to develop the factual record that the district court wanted in order to determine. Your Honor, if I may just add, I did petition in the lower court for the absolute immunity question to be certified to come here because there was a grant of absolute immunity for some of the issues. Again, I believe that there's been an undecided issue which was touched on by That's not before us. No one's asking for absolute immunity here. I don't see it anywhere. I didn't see it in the briefs. It was alluded to that absolute immunity was still an issue with respect to the prosecutors and once the record was developed. Unless I'm mistaken, it's not before us. That's right. Supposing we were to decide that there was no probable cause, but the officers are shielded by qualified immunity? Maybe you can address whether they should be or not. Let's get beyond the probable cause. Let's say they had probable cause. Does qualified immunity apply? I don't believe so. I believe it was clearly established law in 2009 that both inculpatory and exculpatory evidence need to be presented in a warrant and that you're not allowed to intentionally mislead the court, that you're not allowed to withhold exculpatory information such as You say exculpatory evidence. Let me clarify. That's not helpful. Take that word away. Fair enough. In light of the brevity of the issue, I will abandon the word. But the information such as the messenger log which is discussed in the complaint that was artfully not presented, the failure to clarify who could have been tracked through, I forget what the scan card is, the fact that the telephone line was actually on multiple phones within an office that was open to the general public. What about the parking thing? That assumes that the person parks in the garage. Your Honor, I'm not saying that one piece alone vitiates probable cause, but in totality when you look at all of these pieces, the independent fact finder deserved to know this information in doing its analysis and in weighing whether or not there's probable cause. But again, the grand jury did not come back with an indictment. They don't. They come back with a presentment that's written by the prosecutors. They simply adopt what the prosecutor asks them to present. So again, there was no probable cause hearing at the grand jury level. The prosecutors were acting as investigators and they were misleading the grand jury to obtain a presentment that they later pointed to to say it's in the presentment. And that is simply not how this was supposed to occur. Thank you. Thank you, Your Honor. Is there still time for two minutes? I believe so, Your Honor. Okay. Just to address a couple things that the plaintiff's counsel mentioned. The elements of the offense, he keeps saying it's a malicious prosecution Fourth Amendment claim. Well, against the prosecutors, I still have no idea what the elements of that offense are because they're immune for their probable cause determination. So what the district judge left against the prosecutors was that they destroyed notes. But if that destruction of notes didn't violate his rights, how could they be liable under malicious prosecution for the Fourth Amendment when they're immune for their probable cause determination? The district court said it's not going to define the contours of the right under the Fourth Amendment. The Supreme Court has repeatedly said officials are not to be held liable for money damages if the contours of the rights aren't clearly established such that any official would have known at the time that their conduct would violate that right. And with the destruction of notes, you just don't have it. For the agents, when we talk about whether there was probable cause, plaintiff's counsel brings up all sorts of things that they could have cross-examined the witnesses about. Well, defense counsel for Mr. Zimmerman did. There was a preliminary hearing. It was long. The judge at the preliminary hearing was the same judge that approved the affidavit of probable cause. It was Judge Winter. So we know what Judge Winter would do if Luchetto was cross-examined about how big the room was. He would say there's sufficient evidence to go forward because he did. And we know what Judge Lewis would say if Luchetto was cross-examined about how big the room was. He would say there's sufficient evidence to go forward because he did. The plaintiff had an opportunity to test the sufficiency of the evidence to be charged and two judges said that the evidence was sufficient. So we know the answer of what happens when you take the warrant and you add in his facts. The judges still said there was sufficient evidence for him to be charged. And as a result, we believe that the law was not clearly established that any reasonable official leading in probable cause would have been clearly incompetent. And I'm happy to answer any other questions your honors may have. Thank you. We're one of the very, very few attorneys in my 25 years here who stopped the rebuttal before the red light went on. But we've had an era. It might be the first time I've done it, Your Honor. Okay. Well, just don't forget about it because it's not too big of a window.